Ann E. **BUBLITZ** and Dorothy A. **Pierce**, Individually and on Behalf of Themselves and All Persons Similarly Situated, Plaintiff,

v.

**E.I. DUPONT DE NEMOURS AND COMPANY,** and Pioneer Hi–Bred International, Inc., Defendant.

No. 4–00–CV–90247.

United States District Court, S.D. Iowa, Central Division.

Sept. 26, 2000.

Gerald J. Newbrough, Michael W. Thrall, Frank B. Harty, Nyemaster, Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, IA, Daniel M. Reilly, Larry S. Pozner, Julie M. Williamson, Hoffman, Reilly, Pozner &

Williamson, L.L.P., Denver, CO, for plaintiffs.

Michael A. Giudicessi, William J. Hunnicutt, Faegre & Benson, Des Moines, IA, John B. Gordon, Steven L. Severson, James A. O'Neal, Paul W. Heiring, Ahna M. Thoresen, Faegre & Benson, Minneapolis, MN, for defendants.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Before the Court is Plaintiffs' motion to modify or set aside U.S. Magistrate Judge Shields' Order granting Plaintiffs permission to communicate with putative class members and denying Defendants motion to restrict the same. Plaintiffs filed their Objections to Magistrate Judge's Order and Request for Stay on the same day that Magistrate Judge Shields filed his Order, September 22, 2000. Plaintiffs and Defendants also appeared before the Court on September 22, 2000. The Court stayed the Magistrate Judge Shields' Order until September 27, 2000 or until this Court could rule on the matter. For the reasons stated below, the Court will modify the Order.

## I. Background

Ann Bublitz and Dorothy Pierce filed this class action on behalf of themselves and approximately 250 management-level employees of Defendants, E.I. duPont de Nemours ("DuPont") and Pioneer Hi–Bred International, Inc. ("Pioneer"). Plaintiffs seek declaratory and other relief against Defendants under a Change in Control Severance Compensation Plan for Management Employees ("CIC Plan"). The CIC Plan essentially provides three years' salary as a severance to eligible employees who leave the company either (a) when asked by the company or (b) when they voluntarily quit or retire and are determined to have left the company for "Stated Good Reasons," as described in the Plan. Plaintiffs allege that their rights under the CIC Plan, which was created by Pioneer, have either been "triggered" or are "triggerable" at their discretion since DuPont has taken over Pioneer. Plaintiffs filed this lawsuit on April 21, 2000 and moved to certify the class on August 8, 2000. To date, the class has not been certified; but the fact that the class has yet to be certified is at least in part due to the Court's granting of Defendant's request to extend the time for them to resist the certification.

Since the class has not been certified, Defendants wish to present a Retention Proposal directly to the members of the putative class as well as have other related communications directly with the members. The Retention Proposal consists of incentives and benefits, in exchange for which the employees must waive their rights under the CIC Plan. Defendants filed a motion to allow the communications [1] (though maintaining that such a motion was not necessary), and Plaintiffs filed a cross motion to restrict any such communication. Magistrate Judge Shields granted Defendants' motion and denied Plaintiffs motion outright. Plaintiffs now ask this Court to modify or set aside Magistrate Judge Shields' Order.

## II. Standard of Review

Federal Rule of Civil Procedure 72(a) provides the standard for a district court's review of a magistrate judge's order on a nondisposive matter. Rule 72(a) states, in relevant part, as follows:

Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made. The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order

1. While it is true that Defendants filed their Motion to Allow Communications with Employees and Request for Expedited Ruling on August 3, 2000, five days prior to Plaintiffs' motion to certify the class, the significance of the dates of those filings is tenuous at best. Plaintiffs claim that the settlement negotiations were prompted by the filing of the class action. Defendants claim that the negotiations began prior to the filing of Plaintiffs' action. What the Court does find significant is the fact that the filings were so close in time and the parties now seem to be in a race to communicate with the potential class members.

found to be clearly erroneous or contrary to law.

Thus, this Court may not set aside or modify Magistrate Judge Shields' Order unless it is clearly erroneous or contrary to law.

## III. Discussion

■ The Court, for the most part, agrees with Magistrate Judge Shields. Magistrate Judge Shields held that there was insufficient evidence to justify the limitations on Defendants' communications requested by Plaintiffs. However, the Court disagrees with Magistrate Judge Shields as to the significance of the employer-employee relationship between the Defendants and putative class members. With respect to that relationship, Magistrate Judge Shields' Order states as follows:

> Complicating the issue, however, is the existence of the employer-employee relationship between the defendants and the putative class members. Plaintiffs contend the employee-employer relationship creates an increased potential for undue influence and coercion by defendants over the employees, resulting in improperly obtained waivers. Although the Court is cognizant of this potential for abuse, there is no factual record of coercion at this point. Defendants' stated intention to seek waiver of an employee's rights under the CIC Plan does not, in and of itself, suggest coercion. The employees are free to consult legal counsel of their choosing to discuss the Retention Proposal and the ramifications of any waiver. Further, the Court believes that settlement between an employer and employees should be encouraged, not unduly restricted by premature judicial intervention. At the very least, the Court should not deny the employees the opportunity, and their right, to consider an offer from their employer.

The Court is of the opinion that the at-will employer-employee relationship between Defendants and the putative class members produces a strong potential for coercion and thus justifies minimal protections. The Court therefore holds that Magistrate Judge Shields' failure to provide such minimal protections was an error of law.

The authority provided to this Court by Rule 23(d) to exercise control over a class action must be exercised within the boundaries of two guideposts: *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) and *Great Rivers Cooperative v. Farmland Industries, Inc.,* 59 F.3d 764 (8th Cir.1995). *See* Fed.R.Civ.P. 23(d). In *Gulf Oil,* while the Supreme Court dealt with limitations on communications between named plaintiffs and their counsel with prospective class members, it nonetheless set forth a broad principle that limitations on communications with potential class members must derive from evidence in the record and involve a weighing of competing factors. *Gulf Oil,* 452 U.S. at 102–104, 101 S.Ct. 2193 (noting that the district court abused its discretion where there was no findings supporting a sweeping restraint order). In *Great Rivers,* the 8th Circuit struck down a district court's restriction on the defendant-employer from communicating anything to the putative class member employees that could reasonably be taken as an invitation to opt out. *Great Rivers,* 59 F.3d at 765–766. The district court's restriction was based on an article by the defendant-employer denouncing the class action suit as " 'a direct attack on your [the putative class members] Association and on the cooperative system as a whole.' " *Id.* at 765 (quoting Manual for Complex Litigation, Second § 30.24 at 232 (1985)). The 8th Circuit held that such evidence was not sufficient to support such an order. *Id.* at 766. Citing *Gulf Oil,* the 8th Circuit stated the following:

> Before entry of such an order, there must be a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. *Gulf Oil v. Bernard,* 452 U.S. 89, 101, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981). 'In addition, such a weighing-identifying the potential abuses being addressed-should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.' *Id.* at 102, 101 S.Ct. at 2200. 'Nevertheless, a limited restriction-such as precluding a defendant from soliciting class members to opt out of the litigation-will sometimes be

justified.' MCL 2d § 30.24 at 232 (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir.1985)).

*Id.* at 766. Thus, the Court must weigh the need for a limitation on Defendants' communication and the potential interference with the rights of the parties and come up with a carefully drawn order that addresses those concerns.

■ Magistrate Judge Shields was correct in that the record does not provide sufficient evidence of coercion to justify the limitations requested by the Plaintiffs. A defendant-employer has the right to communicate settlement offers directly to putative class member employees. *See Great Rivers*, 59 F.3d at 766 (holding that there was insufficient evidence to restrict the defendant-employer from inviting the putative class member employees to opt out of the class). However, a defendant-employer may not abuse that right. *See* Manual for Complex Litigation, Third § 30.24 at 233 (1995) ("Defendants ordinarily are not precluded from communications with putative class members, including discussions of settlement offers with individual class members before certification, but may not give false or misleading information or attempt to influence class members in making their decision whether to remain in the class.") (citations omitted). The only evidence in the record concerning Defendants' communications with putative class members is that Defendants are the employers of the putative class members, and wish to offer them what essentially amounts to a settlement offer and have other related communications with them.[2] The Court finds that this evidence does not equate to the evidence involved in *Great Rivers*, 59 F.3d at 765. The evidence therefore does not support a requirement that all such communications must first be approved by either the Court or Plaintiffs, as requested by· the Plaintiffs.[3] On this broad issue, the Court agrees with Magistrate Judge Shields.

2. Def.s' Mot. to Allow Communications with Employees and Request for Expedited Ruling ¶ 7.

3. Pl.s' Brief in Supp. of Mot. for an Order Restricting Def.'s Contact and Communications

The Court, however, parts company with Magistrate Judge Shields on the significance of the at-will employer-employee relationship between Defendants and the putative class members. Where the defendant is the current employer of putative class members who are at-will employees, the risk of coercion is particularly high; indeed, there may in fact be some inherent coercion in such a situation. This Court is not the first to recognize this. In *Kleiner v. First National Bank of Atlanta*, the 11th Circuit recognized the following:

A unilateral communications scheme, moreover, is rife with potential for coercion. '[I]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.'

... In view of the tension between the preference for class adjudication and the individual autonomy afforded by exclusion, it is critical that the class receive accurate and impartial information regarding the status, purposes and effects of the class action.

... Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal.

751 F.2d 1193, 1202–1203 (11th Cir.1985). In *Abdallah v. Coca–Cola Co.*, 186 F.R.D. 672, 678 (N.D.Ga.1999), as in this case, the putative class members were current employees of the defendant. *Id.* The court held that while the defendant did not give the court any reason to suspect the defendants would attempt to mislead or coerce the putative class members, simple reality suggested that the danger of coercion was real and justified prohibiting the defendant from speaking to the putative class members about the lawsuit. *Id.* The employer-employee relationship justifies certain minimal protections in this case.

with Members of the Putative Class and in Supp. of Pl.s' Resist. to Def.s' Mot. to Allow Communications with Employees at 6.

The Court will therefore modify Magistrate Judge Shields' Order as follows. First, any communication by the Defendant to the putative class members relating to one of the subjects described at the end of this opinion must be in writing. Second, Defendants must file a copy of that communication, along with the names of the persons it was sent to, with the Court and provide a copy to Plaintiffs' counsel. Third, any offer by Defendants that entails a waiver of rights under the CIC Plan must give the putative class member at least ten days to respond. The Court's Order is laid out in full below.

■ The Court believes this modification addresses Plaintiffs' concerns without infringing on Defendants' rights. Plaintiffs' counsel are concerned about not being able to participate in the presentation of the settlement proposal and related communications, and not being able to analyze the settlement proposal before it was presented to the putative class members. As stated above, Plaintiffs have no right to participate in the presentation of the settlement proposal and related communications, nor do they have the right to analyze it before hand. However, by forcing Defendants to communicate with the putative class members in writing and provide a copy of that communication to Plaintiffs, Plaintiffs' counsel will be in a position to analyze whatever communication is made by Defendants. By requiring Defendants to give the Plaintiffs the names of the putative class members they contacted and giving the putative class members ten days to respond to any request for a waiver of their rights, Plaintiffs' counsel may notify those persons that they have filed a class action regarding the rights under the CIC Plan that may include them.[4] The putative class members will then be in the following position: They will have a written settlement offer, they will have notice that a class action

has been filed regarding their rights, and, they will have time to think about it and contact Plaintiffs' counsel if they so choose. Plaintiffs' counsel, in turn, will be ready to provide an educated analysis.[5]

In-person solicitations pose a particular threat of coercion. This Court recognizes, as did the 11th Circuit in *Kleiner*, 751 F.2d at 1206, that the Supreme Court has found that unsupervised oral solicitations produce distorted statements and the coercion of susceptible individuals:

[I]n-person solicitation may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection. The aim and effect of in-person solicitation may be to provide a one-sided presentation and to encourage speedy and perhaps uninformed decision-making; there is no opportunity for intervention or counter-education. . . .

*Ohralik v. Ohio State Bar Assoc.*, 436 U.S. 447, 457, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). By prohibiting the Defendants from orally soliciting waivers from putative class members, the Court seeks to prevent such harm in this case.

■ Moreover, the Court is not completely without power to invalidate employees' waivers of their rights under the CIC Plan. In *Woods v. Rhodes*, 994 F.2d 494, 502 (8th Cir.1993), the 8th Circuit acknowledged the power to invalidate a release of civil claims where the release was not knowing and voluntary. Therefore, the Court is confident that it is not powerless to cure an unknowing or involuntary waiver of rights under the CIC Plan by a putative class member.

■ The modification does not overly infringe on Defendants' rights. As Defendants pointed out in their brief,[6] a court order constitutes a prior restraint if in order to engage in protected speech, (1) advance

---

**4.** *See* Herbert Newberg & Alba Conte, 3 Newburg on Class Actions § 15.12 (3d. ed.1992) (stating that class counsel may wish to notify absent class members of the commencement of the action before the trial court makes a determination regarding class certification for several reasons).

**5.** *Id.* (stating that no solicitation problems arise when the class action attorney responds to inquiries by the absent class members, and that

"[c]lass members may inquire about their legal rights, the nature of the class action, or the prospect that the attorney for the class will represent them personally in the litigation").

**6.** Def.s' Joint Mem. in Resist. to Pl.s' Mot. to Restrict Contact Between Pioneer and its Employees at 5–6.

approval of the government is required, (2) the approval depends on affirmative action by a government official and such action requires the exercise of judgment, and (3) the government official may render that judgment based on the content of the speech. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 554, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). The requirements set forth in the Court's Order do not amount to a prior restraint. The Court does not seek to regulate the content of Defendants' communications with the putative class members. No permission by the Court or Plaintiffs is necessary before Defendants send their communications to the putative class members. Furthermore, requiring Defendants to inform Plaintiffs of the content of those communications does not seem far from Defendants intentions in the first place. In a letter to Plaintiffs' counsel dated May 31, 2000, Defendants stated the following:

> Nevertheless, I am authorized to tell you that neither Pioneer nor Dupont intends to communicate generally with the membership in the putative class about making changes in the CIC Plan or taking any action that would have the effect of settling the lawsuit or extinguishing class members' claims under the plan, without giving you prior notice of what those communications will be. In fact, we intend to seek court approval of such communications before they occur pursuant to an appropriately noticed motion.[7]

The Court therefore does not think that the modification unjustly burdens Defendants.

The Court is convinced that its modification of Magistrate Judge Shields' Order is the best it can do to keep everything above board and is consistent with Rule 23: It seeks to protect the putative class members' right to a fair trial, the interests of the class action and the principles of Rule 23, and the First Amendment rights of the Defendants. *See* Fed.R.Civ.P. 23. This task is especially onerous when the parties, like the ones in this case, are so close to a determination on class certification.

---

7. Pl.s' Br. in Supp. of Mot. for an Order Restricting Def.s' Contact and Communications with Members of the Putative Class and in Supp. of

## IV. Order

The Order of the Court is as follows:

(1) The stay on Magistrate Judge Shields' Order is lifted;

(2) Any communications by Defendants to putative class members on the following subjects must be in writing, filed with the Court, and copied to the Plaintiffs within 24 hours from when they are made:

  (a) the merits, status or effect of this action;

  (b) a class member's participation in this action;

  (c) settlement or other resolution of the claims and issues presented in this action;

  (d) settlement or other resolution of the class members' rights and benefits under the CIC Plan; and

  (e) matters that would result in a class member waiving, releasing or compromising his or her rights under the CIC Plan;

(3) Along with copies of the communications described in part (2), Defendants must provide to the Court and Plaintiffs a list of the names of the employees to whom those communications were sent;

(4) Any offer by Defendants entailing a request to waive rights under the CIC Plan must give putative class members at least ten days to respond;

(5) Excluded from the requirements set out in this Order are communications to employees whose job responsibilities include administering or performing the CIC Plan and communications that are necessary to gather factual information for the defense or settlement of this action;

---

Pl.s' Resist. to Def.s' Mot. to Allow Communications with Employees, Ex. A.

(6) This Order will be in effect until the Court rules on the certification of the class.

**IT IS SO ORDERED.**